```
CAPEHART & SCATCHARD, P.A.
A Professional Corporation
Laurel Corporate Center
8000 Midlantic Drive, Suite 300 S
Mount Laurel, N.J.  08054
(856) 234-6800
Attorneys for Defendant, Haddon Heights Board of Education
JFB8646
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| H. M. by her parents B. M. and R. M., and B. M. and R. M. individually,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>Haddon Heights Board of Education,<br><br>　　　　Defendant. | **Document Electronically Filed**<br><br>DOCKET NO. 1:09-cv-04293-NLH-AMD<br><br>CIVIL ACTION<br><br>**BRIEF IN OPPOSITION TO MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD**<br><br>RETURNABLE:  MARCH 15, 2010 |

## STATEMENT OF FACTS

In May 2005, H.M. was classified by the Haddon Heights Child Study Team as a child with a disability eligible for special education services with a specific learning disability in basic reading skills and mathematics computation.  H.M. was provided special education services through the 2007-2008 school year.  In May 2008, H.M. was re-evaluated.  The Child Study Team determined that H.M. did not meet the criteria for special education and related services, and as a result, H.M. was declassified.

1

On June 5, 2008, H.M. by her parents B.M. and R.M. ("plaintiffs") filed a Request for Due Process Hearing. The various allegations of the Due Process Petition can be categorized as follows: 1) Whether the Team's decision in May, 2008 finding H. M. no longer eligibility for special education was correct; 2) Whether the services provided to H.M. by The Cooper Learning Center during the summer of 2008 qualify as ESY services such that the parents should be reimbursed; and 3) Whether H.M. was denied a free appropriate public education ("FAPE") for the 2006-2007 and 2007-2008 school years, thus leading to an award of compensatory education.

During numerous days of testimony before the Honorable Joseph F. Martone, A.L.J. in which both parties had an opportunity to submit evidence regarding H.M.'s progress, her relative strengths and weaknesses and the relevant factors considered by the Child Study Team in deciding to declassify H.M. Judge Martone determined that the Haddon Heights Board of Education's ("Board") action declassifying H.M. was correct and appropriate. Further, Judge Martone dismissed H.M.'s remaining claims because compensatory education cannot be awarded to an ineligible student and the extended school year for which tuition H.M. sought reimbursement was subsequent to the declassification of H.M.

Subsequently, plaintiffs filed this action in U.S. District Court pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 *et seq.* ("IDEIA") and are requesting to supplement the administrative record with additional evidence.

## LEGAL ARGUMENT

**I. PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD MUST BE DENIED BECAUSE PLAINTIFFS HAVE FAILED TO PROVIDE THE COURT AND DEFENDANT WITH THE SPECIFIC EVIDENCE THEY WISH TO INTRODUCE.**

In order for the Board to properly respond to this motion, the Board is entitled to review and evaluate the particular evidence plaintiffs wish to introduce. Further, the Court must be able to evaluate the specific evidence plaintiffs wish to introduce in order to determine whether the evidence meets the standard for introduction of additional evidence. However, plaintiffs have not provided the specific evidence they intend to introduce to supplement the administrative record. Plaintiffs have simply indicated, through self-serving, raw speculation of R.M. that this mysterious evidence includes progress reports and expert opinion (from an unknown expert) relevant to H.M.'s receipt of what appears to have been enrichment tutoring aimed at reading fluency that was compiled <u>after</u> the decision to declassify H.M. was made. Since plaintiffs have failed to provide copies of the evidence for the

3

defendant's and the Court's review, their motion to supplement the record must be denied.

Should the Court determine that copies of the additional evidence are not necessary, the Board offers the following argument opposing the motion to supplement the administrative record.

> **II. PLAINTIFFS' MOTION MUST BE DENIED BECAUSE THEY ADMIT THAT THE EVIDENCE WAS AVAILABLE DURING THE ADMINISTRATIVE HEARING AND EVIDENCE REGARDING THE TIME PERIOD AFTER H.M. WAS DECLASSIFIED IS BARRED BECAUSE PLAINTIFFS OBJECTED TO ALLOWING SUCH INFORMATION TO BE INTRODUCED BY DEFENDANT IN THE ADMINISTRATIVE HEARING.**
>
> **A. LEGAL STANDARD FOR ADMISSION OF ADDITIONAL EVIDENCE.**

The IDEIA allows a party to request that the reviewing court admit additional evidence to supplement the administrative record. However, courts have the discretion to limit the introduction of additional evidence under the IDEIA. Schaffer v. Weast, 554 F.3d 470, 476 (4th Cir. 2009). This discretion is necessary to "avoid turning the administrative hearing into a 'mere dress rehearsal' followed by an 'unrestricted trial *de novo*' in the district court." Ibid. In The Metropolitan Gov. of Nashville v. Cook, 915 F.2d 232, 234-6 (6th Cir. 1990), the 6th Circuit noted:

> A trial court must make an independent ruling based on the preponderance of the evidence, but the Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial. The reasons for

> supplementation will vary; they might include gaps in
> the administrative transcript owing to mechanical
> failure, unavailability of a witness, an improper
> exclusion of evidence by the administrative agency,
> and evidence concerning relevant events occurring
> subsequent to the administrative hearing.  The
> starting point for determining what additional
> evidence should be received, however, is the record of
> the administrative proceeding.

(*quoting* Town of Burlington v. Depart. of Educ., 736 F.2d 773, 790 (1st Cir. 1984)).  Since plaintiffs indicate that the evidence to be provided was available in May, 2008, and therefore, during the administrative hearing, the evidence must not be admitted.  Further, the fact that plaintiffs specifically opposed the Board's ability to admit evidence in the administrative hearing regarding the time period after H.M. was declassified bars their ability to request that any evidence regarding the time period after declassification be admitted.

>    **B.   PLAINTIFFS' MOTION MUST BE DENIED BECAUSE THEY
>          ADMIT THAT THE EVIDENCE WAS AVAILABLE DURING THE
>          ADMINISTRATIVE HEARING.**

   On pages 3-4 of plaintiffs' brief, they stated the following:

> Specifically, this evidence will show that objective
> measures specifically related to reading fluency are
> available and were available to the Board in May,
> 2008.  This is relevant to whether the Board acted
> reasonably in declassifying H.M. without relying upon
> any of the objective data that could have been
> gathered.

Plaintiffs were given the complete student records file regarding H.M. prior to the administrative hearing.  They had

5

access to and named several expert witnesses who worked with and evaluated H.M. on her reading ability before the decision to declassify was made. If plaintiffs were aware of objective measures and other information that would have aided their arguments regarding H.M.'s reading fluency, then it was their prerogative to bring that information before the administrative law judge. Moreover, the plaintiffs' assertion that the Board's Child Study Team ignored objective measures relating to reading fluency is not supported by the administrative record. H.M.'s reading fluency was evaluated through standardized testing performed by the Board's Learning Consultant, Patricia T. Woodland using several testing instruments. (Please see attached Exhibit 1 for a copy of Ms. Woodland's report). Plaintiffs had every opportunity to cross examine Ms. Woodland and to challenge her report. Interestingly, plaintiffs never disputed the findings in Ms. Woodland's report regarding H.M.'s reading fluency. Plaintiffs also had the opportunity to request independent evaluations of H.M.'s reading ability through N.J.A.C. 6A:14-2.5, which they did not pursue.

Specifically, Ms. Woodland's report noted the following:

> H.M. received an average rating in Reading Fluency subtest with a standard score of 106 (standard score range of 99-113) with a percentile rank of 66.

Thus, the only competent, relevant and acceptable standardized achievement test that measured the relevant category in the

Administrative Code found H.M. to be in the average range in Reading Fluency.  Further, Ms. Woodland indicated:

> The WJ-III Academic Skills cluster is a measure of reading decoding, math calculation and spelling providing an overall level of basic achievement skills.  H. received an average rating with a standard score of 93 (standard score range of 88-98) with a percentile of 32.  Specifically, her sight reading ability and spelling are average.  Her math calculation skill is low average to average.  The WJ-III Academic Fluency cluster combines an individual's performance on the reading, writing, and math fluency subtest providing an overall index of academic fluency with a school setting.  H. received an overall average rating with a standard score of 106 (standard score range of 99-112) and a percentile rank of 64.  The fluency with which H. performs academic tasks is average to advanced.  For example, her fluency with reading and writing tasks is average to advanced.  Her fluency with mathematics problems is average.

In addition, Ms. Woodland used the Gray Oral Reading Tests-Diagnostic ("GORT"), which is also a formal, standardized, professionally accepted diagnostic instrument that is tied directly into the Code criterion of Reading Fluency.  As noted by Ms. Woodland, the GORT measures a student's strengths and weaknesses in the areas relating to reading, particularly fluency and comprehension.  She reported the following as to H.:

> On the Paragraph Reading subtest, a series of graded passages are read aloud by the student.  The examiner records the number of deviations from print that are made and notes the time in seconds that it takes to read the passage.  Two scores, rate and accuracy, are derived from this procedure.  In addition, comprehension questions are asked, and the comprehension score is added to the rate and accuracy scores to derive a paragraph reading score.  On the Paragraph Reading subtest, Hailey received a standard

7

>score of 8, a percentile rank of 25 and a grade equivalent of 5.0, which places her within the average range.  Many of H.'s miscues consists of vowel sound confusion (fire/fierce), words that have more than one pronunciation (present/present, live/live).  While H. experienced difficulty with oral fluency accuracy, her comprehension of the stories was not significantly impacted.  H. appeared to understand what had occurred in the story.  When redirected to read a word, H. was able to self correct on 90% of the words presented.  When reminded to use the phonetic rule, she was able to appropriately read the word.  Accuracy improved when H. was directed to take her time and look at the words carefully.

As can be seen from Ms. Woodland's detailed report, the issue of reading fluency was fully litigated before Judge Martone during the administrative hearing.  These objective tests were administered to H.M. and based on her performance, a determination to declassify was made by the Child Study Team.  Plaintiffs were in possession of this report from Ms. Woodland and had an opportunity to cross-examine her during the administrative hearing.

Furthermore, plaintiffs were given the opportunity to present expert testimony during the administrative hearing.  In fact, expert testimony was provided on behalf of the plaintiffs by Dr. Richard Selznick, Director of the Cooper Learning Center.  Dr. Selznick provided extensive testimony regarding what he viewed to be H.M.'s decoding and reading fluency problems and his view that H.M. necessitated services tied into the Orton Gillingham methodology.  Dr. Selznick noted that he had the

opportunity to compare the evaluations he performed on H.M. during the summer 2008 to previous evaluations performed by the school district.  All of the testimony and opinions of Dr. Selznick were presented to Judge Martone during the administrative hearing.  As the 6th Circuit noted in <u>Metropolitan</u>, <u>supra</u>, plaintiffs do not have the right to treat the administrative hearing as a "dress rehearsal" by attempting to present additional evidence that was available during the administrative hearing that they may have failed to produce.  That is not the purpose behind the IDEIA's allowance of additional evidence in district court.

     Moreover, plaintiffs, during cross-examination of the defense witnesses and in the questioning of their own witnesses, were unable to offer any explanation as to how H.M. could participate fully in her literature classes at grade level, advance in the general education curriculum with one of the leanest IEPs and very little special education support services, and achieve proficiency ratings in the state-wide assessments that are tied directly into the New Jersey Core Curriculum Content Standards with her reading fluency suffering to such a degree as to qualify as a Specific Learning Disability.

     Therefore, since the supplemental evidence plaintiffs wish to admit was available to them during the administrative hearing and plaintiffs had the opportunity to present their expert and

cross-examine all of the defense witnesses during the hearing, the Board respectfully requests that Your Honor deny the plaintiffs' motion to supplement the administrative record.

### III. PLAINTIFFS ARE BARRED FROM REQUESTING THAT ADDITIONAL EVIDENCE BE ADMITTED DUE TO THE PLAINTIFFS' OBJECTIONS TO THE BOARD ADMITTING EVIDENCE REGARDING THE TIME PERIOD AFTER DECLASSIFICATION DURING THE ADMINISTRATIVE HEARING.

During the administrative hearing, the Board attempted to admit evidence regarding the Qualitative Reading Inventory ("QRI") Assessment that was administered to H.M. during her fifth grade year.  Plaintiffs objected, citing the fact that the assessment was not used in the determination to declassify H.M. because it occurred after declassification.  Now, plaintiffs are requesting that they be able to supplement the administrative record with additional expert testimony and progress reports. Plaintiffs cannot have it both ways.  (Please see attached Exhibit 2).  Since plaintiffs objected to the Board's attempt to enter the QRI assessment into evidence because it took place after the determination to declassify (an objection that was sustained by Judge Martone), plaintiffs should not be allowed to introduce new information that post-dates the declassification determination.

Judge Martone noted, in sustaining plaintiffs' objection that:

10

> You know, the usual -- the usual type of case that I have is one where there is -- a child is placed in an educational program and I'm to be asked to decide whether a specific IEP is appropriate and -- and usually after events had -- after the fact are allowed in because it's important to the child's interests -- in the best interest of the child to determine really what is -- you know, what the proper determination should be.
>
> This is different, though.  This is a determination that was made at a point in time that H.M. is not qualified or not eligible for special education and related services.  I'm not sure that it would be fair to consider after -- events that occurred after the fact.  And to the extent that this is a test that occurred after the fact I'm going to -- going to exclude it.

(Exhibit 2, pg. 124 Lines 2-18).

As Judge Martone opined, any evidence that post-dates H.M.'s declassification is irrelevant to these proceedings, including information regarding educational services received and any alleged progress made by H.M.  The issue before the Court deals with whether the Board properly declassified H.M. in May 2008 and the only evidence that is relevant to this issue is evidence that was available to the Board and the Child Study Team at the time of declassification.  Evidence of progress made by H.M. as a result of enrichment tutoring that was provided at parental expense <u>after</u> the decision to declassify was made should not be allowed.

Therefore, plaintiffs' request for admission of additional evidence that post-dates H.M.'s declassification must be denied

because the evidence is irrelevant to these proceedings and barred due to the plaintiffs' objections during the administrative hearing.

## CONCLUSION

Based on the foregoing, the Board respectfully requests that Your Honor deny plaintiffs' motion to supplement the administrative record.

>                    CAPEHART & SCATCHARD, P.A.
>                    Attorneys for Defendant, Haddon
>                    Heights Board of Education
>
>
>              By:   _/s/ Joseph F. Betley_
>
>                    Joseph F. Betley

Dated:  March 1, 2010