IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| H.M., by her Parents, B.M. and R.M., and B.M. and R.M., individually, | CIVIL NO. 09-4293(NLH)(AMD) |
| Plaintiffs, | |
| v. | **OPINION** |
| HADDON HEIGHTS BOARD OF EDUCATION, | |
| Defendant. | |

**APPEARANCES:**

CATHERINE MERINO REISMAN
REISMAN CAROLLA LLP
19 Chestnut Street
HADDONFIELD, NJ 08033-1810

    On behalf of Plaintiffs

JOSEPH F. BETLEY
CAPEHART & SCATCHARD, P.A.
LAUREL CORPORATE CENTER - SUITE 300
8000 MIDLANTIC DRIVE - C.S. 5016
MOUNT LAUREL, NJ 08054

    On behalf of Defendant

**HILLMAN**, District Judge

    This case concerns claims by a child and her parents that the child's school district has, *inter alia*, violated her right to a free appropriate public education.  Currently pending is Plaintiffs' "Motion to Supplement Administrative Record."  For the reasons expressed below, Plaintiffs' motion will be granted.

**BACKGROUND**

Plaintiffs B.M. and R.M. are the parents and legal guardians of H.M., a thirteen year-old child attending school in the Borough of Haddon Heights, Camden County, New Jersey. Defendant, Haddon Heights Board of Education, is a public body charged with the conduct, supervision and management of Haddon Heights public schools. H.M. began attending Kindergarten in September 2002 in the Haddon Heights public schools. Her parents obtained a private evaluation of H.M. highlighting her learning disability which they provided to the Child Study Team (CST). In May 2005, the Board's CST classified H.M. with a disability eligible for special education services based upon H.M.'s learning disability in reading and mathematical calculation. The CST developed individual education plans (IEP) for H.M. in May 2005 through May 2008. In May 2008 at a reevaluation meeting and IEP meeting, the CST determined that H.M. did not require special education to progress in the general education curriculum and she did not meet the criteria for special education services. As a result, the CST declassified H.M.

Prior to the declassification, Plaintiffs expressed their beliefs that Defendant failed to implement H.M.'s 2007-2008 IEP appropriately. Specifically, Plaintiffs complained that from September until December 2007, H.M. did not have a special education teacher, although the IEP provided for special

services to support H.M.  Additionally, Plaintiffs expressed that both Defendant and H.M.'s general education teacher failed to sufficiently address concerns they had regarding H.M.'s reading instruction.  Plaintiffs believed that Defendant relied on subjective and unsupported conclusory statements that H.M. was performing "at grade level" in declassifying her over their objection.

## PROCEDURAL HISTORY

On June 5, 2008, Plaintiffs filed a complaint with the New Jersey Department of Education, Office of Special Education, for a due process hearing related to H.M.'s education.  Plaintiffs' complaint demanded an order requiring Defendant to re-classify H.M. and provide appropriate special education and related services; compensatory education for the 2006-2007 and 2007-2008 school years; and tuition reimbursement for extended school year programming at Cooper Learning Center.  The matter was transmitted to the Office of Administrative Law (OAL) on July 7, 2008 for a hearing.  In his opinion dated May 28, 2009, the Administrative Law Judge (ALJ) affirmed Defendant's determination that H.M. was no longer eligible for special education and related services.[1]

As a result of the ALJ's decision, Plaintiffs filed this case

---

[1] The loss of eligibility for special education services was considered a threshold issue and consequently the ALJ did not need to address Plaintiffs' claims for compensatory education and tuition for the extended school year.

alleging that Defendant violated their rights under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.* (IDEA), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131, *et seq.*, and New Jersey Special Education Law and Regulations. Specifically, Plaintiffs claim that the ALJ erred as a matter of law in concluding that H.M. was no longer eligible for special education in May 2008. Plaintiffs also contend that Defendant did not meet its burden of proving that the 2006-2007 and 2007-2008 IEPs provided a free appropriate public education (FAPE). Finally, Plaintiffs claim Defendant also failed to meet its burden of proving that the decision to declassify H.M. was consistent with the law.

After filing their complaint, Plaintiffs filed the instant "Motion to Supplement the Administrative Record," which seeks to introduce evidence that would shed light on whether Defendant's decision to declassify H.M. was reasonable under the circumstances. Defendant has opposed Plaintiffs' motion.

## DISCUSSION

**A.   Jurisdiction**

Because Plaintiffs have brought this case pursuant to the IDEA, Rehabilitation Act, and the ADA, this Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims

4

pursuant to 28 U.S.C. § 1367.

**B.   Analysis**

Although Plaintiffs have advanced claims for Defendant's alleged violations of several laws, this matter, in large measure, is an appeal from the administrative process regarding their IDEA claims.  Because Plaintiffs have exhausted the requirement of administrative review under the IDEA, they are entitled to bring this civil action pursuant to the IDEA.  See 20 U.S.C. § 1415(e)(2).  The IDEA provides a right to bring a civil action by:

> Any party aggrieved by the findings and decision made
> under subsection (f) or (k) who does not have the right
> to an appeal under subsection (g), and any party
> aggrieved by the findings and decision made under this
> subsection, shall have the right to bring a civil action
> with respect to the complaint presented pursuant to this
> section, which action may be brought in any State court
> of competent jurisdiction or in a district court of the
> United States, without regard to the amount in
> controversy.

20 U.S.C. § 1415(i)(2)(A).  Further, the statute's "additional requirements" clause provides:

> In any action brought under this paragraph, the court--
> (i) shall receive the records of the administrative
> proceedings;
> (ii) shall hear additional evidence at the request of a
> party; and
> (iii) basing its decision on the preponderance of the
> evidence, shall grant such relief as the court determines
> is appropriate.

20 U.S.C. § 1415(i)(2).

5

Pursuant to this "additional requirements" provision in the IDEA, Plaintiffs seek to aid this Court in the determination of whether Defendant violated the IDEA by introducing "additional evidence" that was not provided to the ALJ in the underlying administrative proceedings. Plaintiffs' evidence includes progress reporting and expert opinions resulting from the supplemental instruction that Plaintiffs independently obtained and paid for. Plaintiffs claim that these progress reports and expert opinions demonstrate that H.M. required the instruction they demanded, but Defendant inappropriately refused to provide.

Defendant objects to the Court's consideration of this evidence because Defendant argues that this evidence was available during the administrative hearing, and allowing it would treat the hearing as a "dress rehearsal." Additionally, Defendant repeats the ALJ's view that any evidence post-dating H.M.'s declassification is irrelevant and should not be allowed.[2]

---

[2] Defendant argues that because Plaintiffs prevailed on their argument to the ALJ to preclude Defendant from presenting evidence that was obtained after H.M.'s declassification, they cannot now seek to include evidence that was similarly obtained after H.M.'s declassification. As explained below, this is an independent proceeding, and both parties may proffer whatever evidence they believe will serve to "assist the court in ascertaining whether Congress' goal has been and is being reached for the child involved." Susan N. v. Wilson School District, 70 F.3d 751, 759 (3d Cir. 1995). As also explained below, the Court will then consider the parties' objections, and determine whether that evidence will be considered, and what weight it will be afforded.

Those circuit courts which have considered the "additional evidence" issue have approached it in two slightly different ways. The First Circuit has explained that the "additional evidence" clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony, as this would be entirely inconsistent with the usual meaning of the term "additional." Burlington v. Dept. of Educ. for Com. Of Mass., 736 F.2d 773, 790 (1st Cir. 1994). The Burlington approach interprets "additional" to be more in line with the word "supplemental," and the First Circuit has explained that "the reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency and evidence concerning relevant events occurring subsequent to the administrative hearing." Id.

Even with this view of "additional evidence," the First Circuit in Burlington declined to categorically bar testimony from anyone who did or could have testified during the administrative proceedings. Id. The court recognized that although there is an appropriate limit to the admittance of further testimony, "a rigid rule to this effect would unduly limit a court's discretion and constrict its ability to form the independent judgment Congress expressly directed." Id. The court concluded, "The determination of what is 'additional' evidence must be left to the discretion of

the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*."[3]  Id.

In contrast, the Sixth Circuit shied away from the restrictive nature of Burlington's construction of "additional evidence."  See Metropolitan Gov't of Nashville v. Cook, 915 F.2d 232, 234 (6th Cir. 1990).  The Sixth Circuit found that "to 'add' means to join or unite; the limitation on what can be joined inherent in the term 'supplement' is not present in the term 'add.'"  Metropolitan, 915 F.2d at 234.  Thus, the Sixth Circuit affirmed the district court's consideration of testimony regarding a child's alternative educational placements, even though the person giving that testimony appeared in the ALJ hearing, and even though that person

---

[3] In its motion, Defendant argues that Plaintiffs should have provided their proffered additional evidence, particularly their expert opinions, at the administrative hearing.  The Burlington court explained why many parents do not proffer pricey experts at the administrative level: "Our review of the cases involving the Act reveals that in many instances the district court found expert testimony helpful in illuminating the nature of the controversy and relied on it in its decisional process.  There could be some valid reasons for not presenting some or all expert testimony before the state agency.  Experts are expensive--the parties at the state level may feel that their cases can be adequately made with less backup . . . .  We also recognize that in many instances experts who have testified at the administrative hearing will be bringing the court up to date on the child's progress from the time of the hearing to the trial. It would be difficult to draw a sharp line between what had or could have been testified to at the administrative hearing and the trial testimony."  Burlington, 736 F.2d at 790-91.

did not testify as to alternative placements.  Id. at 235.[4]

When our Court of Appeals addressed the "additional evidence" clause, it considered both the First Circuit's and Sixth Circuit's approaches.  Susan N. v. Wilson School District, 70 F.3d 751, 759 (3d Cir. 1995).  In Susan, parents filed a lawsuit under the IDEA, the Rehabilitation Act, and state education law following the state administrative process, which had found in the school district's favor on the parents' claim that the school district failed to evaluate their daughter adequately and classify her as disabled. Id. at 755.  The school district had moved before the trial court for a "Motion for Disposition Under Section 1415(e) of the Individuals with Disabilities Act," in which it argued that the court should affirm the decision of the appeals panel based on the administrative record without hearing additional evidence, and that the court should dismiss the parents' additional statutory claims. Id.  The trial court ruled in the school district's favor on both of these arguments.  Id.

On appeal, the Third Circuit reversed.  The court declined to define concretely the term "additional evidence" in the IDEA, but it followed the reasoning of the First and Sixth Circuits regarding the discretion of the trial court in making such determinations.

---

[4]The Sixth Circuit noted that the First Circuit would probably come to the same conclusion, because "Town of Burlington leaves the determination of what additional evidence may be admitted to the trial court."  Metropolitan, 915 F.2d at 235.

The court explained,

> It is regularly held that the question of what additional evidence to admit in an IDEA judicial review proceeding, as well as the question of the weight due the administrative findings of fact, should be left to the discretion of the trial court. As appellants note, Congress' central goal in enacting the IDEA was to ensure "that each child with disabilities has access to a program that is tailored to his or her changing needs and designed to achieve educational progress." Children are not static beings; neither their academic progress nor their disabilities wait for the resolution of legal conflicts. While a district court appropriately may exclude additional evidence, a court must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved.

Id. at 760.

On remand, the Third Circuit instructed that the district court should use this standard in determining whether to admit the proffered additional evidence--that is, the district court was to determine whether the evidence would assist the court in "ascertaining whether Congress' goal has been and is being reached for the child involved." Id.

Accordingly, in the case here, the Court must ask the same question as to Plaintiffs' proffered "additional evidence." In order to do so, however, the Court must look at the substantive nature of the evidence, and this consideration presents another issue of how to reconcile the additional evidence without completely undermining the purpose and value of the underlying

administrative proceedings.  The Third Circuit has provided guidance on this issue as well.

A district court's decision to allow the inclusion of the evidence employs a modified version of *de novo* review of the administrative law judge's decision.  <u>S.H. v. State-Operated Sch. Dist. of the City of Newark</u>, 336 F.3d 260, 269-70 (3d Cir. 2003). Under this standard, the court "must make its own findings by a preponderance of the evidence," but "must also afford due weight to the ALJ's determination."  <u>Shore Regional High Sch. Bd. of Educ. v. P.S.</u>, 381 F.3d 194, 199 (3d Cir. 2004).  The Third Circuit has explained that "due weight" means that the "factual findings from the administrative proceedings are to be considered *prima facie* correct," so that "if a reviewing court fails to adhere to them, it is obliged to explain why."  <u>S.H.</u>, 336 F.3d at 271.  This standard is employed to avoid "Monday Morning Quarterbacking" because "the dangers inherent in [the] process of second-guessing the decision of a school district with information to which it could not possibly have had access at the time it made those decisions are great, and that in determining whether or not to admit such evidence the district court must examine such evidence carefully." <u>Fuhrmann v. East Hanover Bd. of Educ.</u>, 993 F.2d 1031 (3d Cir. 1993).

It is under this legal framework that the Court will review Plaintiffs' motion.  With regard to the question of whether

11

Plaintiffs will be permitted to proffer evidence that was not presented to the ALJ in the underlying administrative proceedings, the answer is "yes." The plain language of the IDEA requires that the district court "shall hear additional evidence at the request of a party," 20 U.S.C. § 1415(i)(2)(A), and, appropriately so, none of the courts that have addressed the issue have announced a contrary bright-line rule. Although Plaintiffs' motion is styled as a motion to "supplement the administrative record," that title is a misnomer, as the administrative proceedings have completed. Instead, what Plaintiffs are really seeking is to be permitted to provide evidence to cultivate a fuller record here in order to assist the Court in determining whether Congress' goal in enacting the IDEA has been reached for H.M. That request must be honored.

With regard to the question of what weight, if any, such additional evidence will be afforded, that question must be left for another day. Plaintiffs describe that they have progress reports and expert opinions which show that supplemental instruction--which Defendant refused to pay for--was beneficial to H.M. Plaintiffs have not provided this evidence to the Court, and it appears that Defendant has not been provided the opportunity to refute its value. As with all evidence proffered by parties in litigation, the discovery process will provide both sides the ability to prove their respective views as to the

evidence's worth.  Following the discovery process, upon appropriate motions, the parties will articulate their positions, and the Court will then, following the modified *de novo* review standard, determine the final weight to afford this evidence.  At this stage in the case, however, Plaintiffs cannot be foreclosed from providing evidence that was not before the ALJ.  If the Court were to do so, it would be in direct contradiction of the express language of the IDEA and Third Circuit precedent, and would obviate the IDEA's option of bringing a civil suit at the conclusion of the administrative process.[5]

## **CONCLUSION**

For the reasons expressed above, Plaintiffs' motion is granted to the extent that they, as well as Defendant, are permitted to provide whatever evidence they feel would help the Court in ascertaining whether Congress' goal has been reached for H.M.  The weight of such evidence will be evaluated at a future

---

[5]The Court also notes that Plaintiffs have advanced claims under the Rehabilitation Act, the ADA, and state law, and those claims were not part of the IDEA administrative proceedings.  Accordingly, Plaintiffs should be afforded the ability to provide whatever proof they wish to support those claims, and such proof may also consist of the progress reports and expert opinions as to H.M.'s disabilities.  Whether that proof is admissible, relevant or otherwise supportive of their claims is an issue to be resolved after the discovery process has completed.

time.

    An appropriate Order will be entered.

Date: June 22, 2010                    s/ Noel L. Hillman

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

14